Today is Hernandez Alvarez v. Warden, FDC Miami. We'll hear first from Ms. Hedges. Thank you, Your Honor. Good morning and may it please the Court. Elizabeth Hedges, on behalf of the United States. Title VIII U.S.C. Section 1225A1 deems any alien present in the United States who has not been admitted or who arrives in the United States to be an applicant for admission. Ms. Hedges, before you set the table, I'd like to discuss a few things. I just want to sort of understand the new statutory scheme that we have. My understanding is that pre-1996, the scheme was based on entry and that's how the decision of whether you had lawful status was based on entry. And then after 1996, the concept of admission became the defining term of what, if you were lawfully, if you had status when you were present in the United States. That's, yes, Your Honor, that's right. Okay, so the way I read the statute as a whole, or at least the statutory scheme now, is for purposes of being present in the United States, you can either be an admitted alien, which is, could be an alien who is admitted and after inspection and being admitted, could be someone on a tourist visa, a work visa, a humanitarian visa, or you are a applicant for admission. But those are the two statuses of aliens. I think that's roughly correct, Your Honor. And so I don't want to, as we say in our race, there are categories that are not applicants for admission who are also not. No, I understand that, but I'm really talking about people who are present in the United States. So you either, if you're an alien and you're present in the United States, you're going to fall into either an admitted alien or you're an applicant for admission. I think that's generally right, Your Honor. All right, I just wanted to understand that. Thank you. Yes, Your Honor. So you're exactly right about the statutory scheme previous to 1996. Entry was defined as any coming into the United States. After ERIRA in 1996, Congress decided to focus on lawful entry and they defined admission as lawful entry after inspection and authorization by an immigration officer. So under ERIRA, Section 1225B2A mandates the detention of any applicant for admission who cannot show that he or she is clearly and beyond a doubt entitled to be admitted. Petitioners in these cases do not contest that they are applicants for admission under the statute. Let's just make sure we have the language right. It doesn't mandate the detention of any applicant for admission. The wording is a little bit different than that. It says, right, it says, in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained. So you have to not only be an applicant for admission, but also the examining immigration officer must determine that an alien seeking admission, which is a different term than applicant for admission, is not clearly and beyond a doubt entitled to be admitted, right? Yes, Your Honor, that's right. And so seeking admission in the statute, my understanding of petitioners' argument is they say seeking admission narrows applicants for admission. But that can't be right. As I said, applicant for admission is a defined term. Didn't Congress in essence deem that if you are present in the United States and have not been admitted, your status, your legal status is as an applicant for admission. Your subjective intent is irrelevant because Congress has deemed you. That's your status. That's your legal status. That's correct, Judge Lagoa. So it doesn't matter how long you've been in the United States. It doesn't matter if you're in the United States and you're present and you're present in the United States and you have not been admitted or not. Because again, this is to remedy the situation of the difference between entry and admission. Because prior to the 1996 amendment, you could enter into the country and then you would have status and you would have more rights than someone who came into the country legally. That's right, Your Honor. And so the issue here is admission and the legal status is based on admission. And Congress can deem someone and say your legal status is based on an applicant for admission. And if you're an applicant for admission, you're an applicant for admission into University of Miami, you're seeking admission into University of Miami. So I think what we forget here is that applicant for admission is applicant for admission into United States. Yes, Your Honor. And wait a second. Applicant for admission is a defined term in 1225, isn't it? It's a defined term. That's right. It's kind of like a term of art. I mean, when Congress defines a term, that that term has a specified meaning. And when Congress doesn't define a term, we have to use the ordinary everyday meaning, right? The plain meaning of it. Not in this case, Your Honor. But why is that? Well, so two things. So if Your Honor is talking about the phrase applicant for admission, why does it matter what I'm talking about if the rule, if we're talking about rule, if the rule is when Congress defines a term, we have to use the term as Congress defined it. And if Congress didn't define a term, then we have to use the ordinary meaning. Why does it matter which term I'm talking about? So as a general matter, I'm not disagreeing. What I'm saying is that the term admission is also defined. And so what I understand petitioners to be trying to do is read the phrase seeking admission in a colloquial way, which we can't do when admission is, in fact, a defined term. Because Congress has deemed that if you are in the country and you're present and you have not been admitted, you're an applicant for admission. So by definition, you are seeking admission. It's irrelevant what the subjective intent is. Can I bring you to your the 2012 case of Lemus, where the BIA said specifically that Congress, in defining the concept of applicant for admission, in essence says, in other words, many people who are not actually requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be seeking admission under the immigration laws. So that's the whole that's the reason that it's it's an unconventional, but it's really a fiction. But at the end of the day, Congress has the right to make a decision to deem and give someone status. So it's irrelevant what their subjective intent is. I completely agree with that, Your Honor. That's from 2012. That's been the law for a while. Right, Your Honor. So there's definitely decisions going back decades or decisions and regulation going back decades that support our current reading. And so don't you find it interesting, though, that they said, subject to paragraphs B and C, in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained, blah, blah, blah. Instead of simply saying, if the examining immigration officer determines that an applicant for admission is not clearly and beyond a doubt. I mean, that would have been much simpler. So, Your Honor, I have a couple of responses. So one, I think that sort of aligns with one of the things petitioners are saying, which is essentially they're saying, well, why did Congress use two different terms? Aren't you reading something out of the statute? But I think the problem with that is it also reads something out of the statute. It reads out of the statute, but it doesn't read out. If Congress wanted to just say seeking admission, it reads out applicant for admission, which is the defined term. I mean, seeking is, applicant for admission is a noun. Seeking is a present participle. And it implies a sort of, you know, at the time, like this is what's happening at the time. It's an active seeking of admission. Why isn't that the normal everyday meaning of seeking and the present participle there? Why isn't that something different than simply saying applicant for admission, given that Congress wrote this provision, which is about twice as long as it would otherwise be if it hadn't used two different terms? So, Your Honor, it's not entirely different. Instead, applicant for admission is a subset of those who are seeking admission. And we know that because subsection A3 uses that terminology of or otherwise. It says applicant for admission or otherwise, seeking admission or readmission to. And that makes applicant for admission, which precedes the or otherwise, a subset of seeking admission. And this court's decision in Villa Real, which two members of this panel joined in 2016, supports our reading of that. It says the or otherwise indicates. Well, if you look at Villa Real, or otherwise was a part of a list of verbs. And here we have, we don't have just a part of a list of verbs. There's like different parts of speech, and it's a mashup. And so I don't think it's quite as simple as saying that or otherwise here necessarily means what it meant in Villa Real, where you're talking about different parts of speech, where in Villa Real, it's all the same parts of speech. Well, Your Honor, so I would point out that both the Fifth Circuit and the Eighth Circuit just yesterday have agreed that if you were an applicant for admission, you were necessarily seeking admission. So this court doesn't. That's true in two to one opinions in each case, right? That's right, Your Honor. And so, but they agreed with the same reason in Villa Real. I don't read Villa Real as turning on whether there's a verb or a participle being used. Can I ask follow up on that section? Yes, Your Honor. Otherwise seeking admission. What it talks about is all aliens, and obviously all aliens is defined as non-citizens, right? Yes, Your Honor. So who are applicants for admission, and that has a specific definition, or otherwise seeking admission. So it could be an alien who's seeking admission, who is not present in the United States or has not arrived, because we do have aliens who seek admission in third country. So you could be at the consulate in Panama and trying to get a visa or tourist visa to be admitted properly and lawfully into the country, correct? Right, Your Honor. And so another good example would be if you're abroad and you're not in the United States yet, and you're at a foreign airport, and you're seeking admission, you're seeking to come in. There's no need to say applicants for admission by definition are seeking admission. That's why all here, this is saying it's all aliens. If you get rid of applicants, all aliens seeking admission or readmission to transit through the United States shall be inspected by immigration officers, right? But here they're making a specific determination to also include applicants for admission because applicants for admission are a subset of people who are already present in the United States who have not been lawfully admitted. That's right, Your Honor. All right. Thank you. I have a few questions if I might. Yes. Judge Martin. Help me understand what we're comparing. The case comes down to a comparison between the phrase an applicant for admission on the one hand and the phrase an alien seeking admission. That's what we're comparing among other things. As you view it, are we comparing two terms of art or are we coming at it in the way we normally come at these interpretive questions where we give words their ordinary everyday understanding? Or is the problem here that we have a term of art on the one hand and a piece of a term of art on the other hand and one word that has no definition in the statute so we give it an ordinary meaning? What are we comparing? Apples and apples, apples and oranges, or an apple and half an orange? Do you understand the thrust of my question? The reason I raise it is I too was very interested in what the Eighth Circuit said. I read it last night. In critical language of the opinion, basically they're reading these two words to mean essentially the same thing. And to get there, they give it its ordinary meaning. It seems to me if you give these words their ordinary meaning, the answer is clear. An applicant for admission looks pretty close to me to be an alien seeking admission. If I'm just using an applicant for is seeking something, pursuing something, an alien seeking admission is seeking something, although there we know that admission is given a specific term of art by Congress. The term admission or admitted means with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer. So what am I comparing? That's really my first question. Are we giving it just their ordinary meaning? That's what the Eighth Circuit does. And that's essentially what Judge Jones does writing for the majority in the Fifth Circuit. Two ordinary meanings and in common parlance, an applicant for admission is seeking it. It's something who's seeking. And so the two terms mean the same. On the other hand, if an applicant for admission is not given its ordinary meaning but is defined by Congress in a certain way, then it's a term of art and they get to write the language any way they want. And I am obliged to follow their definition. So we can agree an applicant for admission is not given its ordinary meaning. It's a term of art. Would that be a fair statement? Right. Your Honor, it's a defined term. OK. So it includes one category, includes those who are simply present in the United States. I'm not sure which category you're referring to. Referring to the definition in A1, an alien present in the United States who has not been admitted. That's one category of an applicant. And the second clause in the disjunctive is or who arrives in the United States. So you've got two bundles of people included. Those who are present, no matter how long they're here, they borrowed, they came in across the border unlawfully and they found a home in Kansas and they were just hid from the world for 10 years and got involved in an auto wreck and got picked up. That's one group. The other group is those who arrive and that has its own meaning. That's right. So applicant for admission is a term of art. I don't give it just its ordinary meaning, because I would normally think of an applicant for admission as somebody who is seeking to be lawfully admitted. After review by an inspection officer. Right, Your Honor. And so I just so I have an applicant. That's a term of art. Now, what about the phrase seeking admission? Judge Rosenbaum used the phrase. If we were my grammar teacher from the eighth grade was here, she would say that phrase is a present possible. It's really an adjective defining a noun. That's how she would describe those words. We know what admission means because Congress defines it. So that's clearly a term of art. Right. Right. Admission is a term of art. It's a defined term. So the only term that's undefined is seeking. Right. That's right. So we would give that its normal everyday meaning only to the extent that it doesn't make the meaning of the phrase deviate from what Congress has described. Well, we're trying to discern what Congress is doing here. And obviously, the answer is not self-evident or we wouldn't be having this discussion. And the Eighth Circuit wouldn't have had this discussion. And the Fifth Circuit wouldn't have had this discussion. And 300 district courts wouldn't have had this discussion. So obviously, reasonable people are looking at the phrase an applicant for admission and an alien seeking admission in a different way. If you give the words their ordinary meaning, seems to me this case is over. You are clearly right. If an applicant for admission is seeking something. That's right, Your Honor. But I have to give it a special meaning because Congress told me I have to give it a special meaning. So my question really boils down to this. Is an alien who is present in the United States, but has never been admitted, never queued up at the line and said, here I am, I want to come in, crossed the Rio Grande at Eagle Pass and wound his way to California or Southern Florida, present. Is that someone who is seeking? We know seeking means to pursue, to achieve, to quest for, to strive for. You want something. You're doing something to get something. We know the object of the search is admission and we know what the object is. It means lawful entry after inspection by an immigration officer. If an applicant has been here two years, five years, ten years, snuck in, unlawful, not entitled to be here. Is that person seeking lawful entry before an officer? That's the issue I'm trying to get my mind to wrap around. They're, yes, they're seeking admission because if they were not seeking admission, then they would leave the United States. And the statute contemplates that someone can leave the United States voluntarily and no longer be an applicant for admission and therefore would no longer also be seeking it. I take it in a temporal sense when we're talking about seeking admission, we're talking about the time of apprehension or arrest, right? Right, Your Honor. So I don't... When somebody is arrested, they ran a red light. They're unlawfully here, buried in the community for ten years. Were they seeking lawful entry upon arrest? Yes, Your Honor. So the caveat to my agreement with your statement is that it's at the time of inspection in the sense that this text is requiring detention and inspection at a particular time, but it's not at the time in the sense that that person needs to be taking some additional affirmative steps. And we know that in part because that interpretation would have all sorts of strange consequences that we point out in our brief. It also would be directly contrary to the intent of Congress in changing the statute in ARERA, as Judge Legault and I were having the colloquy about, because Congress meant to eliminate the preference for those who sneak past the border. Right, the entry because the change was from entry to admission. So the question becomes, you are... Your status in terms of being admitted or admission makes you... You could be admissible or not. Right, Your Honor. And so the issue becomes... That's why I go back to the subjective intent, which is it... Congress made the determination to deem... That's why I was trying to figure out the different statuses. So if you're president of the United States, you are... As an alien, you are either... Your legal status either is an admitted alien, which means that you were lawfully in the country with... Now you could be admitted alien who loses the lawful status because you overstay your tourist visa, let's say, or your student visa. That's correct. Or you're an applicant for admission. Right. Right. And then... And an applicant for admission, your subjective intent is irrelevant because you're president of the United States and you haven't been admitted. So by definition, Congress is choosing to define you as someone who's seeking admission, even if you don't make an application for admission. Right, Your Honor. And I think that that is consistent with that or otherwise construction that I was talking about, which strongly indicates that seeking is a broader term than applicant for admission. I gave, Your Honors, one example. I believe you brought up another example of who might be seeking but not an applicant. There might be other examples, but the point is, at minimum, they mean the same thing. But we think the best reading of the Let me ask you two follow-up questions. Yes, Your Honor. Where there's obviously some dispute about what meaning we ought to give to these words. What significance, if any, ought we do attribute to the Supreme Court's opinion in Jennings v. Rodriguez? They cite it. It's clear to me that Justice Alito's opinion did not face the question we have here. So any commentary or musings that he and four others of the Supreme Court joining in his opinion made fell into the category of dicta. Right, Your Honor. In the course of that dicta, the obit of dictum in Justice Alito's opinion, it's kind of interesting because he separates out immigration policy between and says the government must decide one, the first category is those who may enter the country. That's the first bulk for his purposes. And the second is those who may stay here after entering. And then he says that process of decision generally begins at the nation's borders and ports of entry where the government must determine whether an alien seeking to enter the country is admissible. Here he's talking about those who arrive. And he talks about the application of 1225 and 1225 B-2 to that class or group. And he says B-2 serves as a catch-all provision that applies to all applicants for admission, not covered under B-1, but these are the arrivals. And then he separates that from a different category. And that category are those once inside the United States who don't have a right necessarily to remain here. He says, for example, an alien present in the country may still be removed if he falls into one of the classes of deportation. And then he says section 1226 applies to that group. Their position is that division essentially tells you something about the overall structure and meaning of 1225 versus 1226. They haven't held that in Jennings. There they were talking about a Ninth Circuit issue and whether they were going to apply the doctrine of constitutional avoidance. Different question from the one we have here. So the most they can say is it's a dicta from the Supreme Court of the United States. What significance, if any, should we give to dicta in Justice Alito's opinion, joined in by four other members of the Supreme Court? So, Your Honor, I think, I believe the Eighth Circuit yesterday addressed this as well. And the thing about Jennings is it has something for everyone. So in addition to those statements being dicta with respect to the question we have here, there's also other statements in Jennings that support our interpretation. So, for example, at page 297, the court says that 1225B1 and 1225B2 thus mandate detention of applicants for admission until certain proceedings have concluded. That aligns with our interpretation. Right. The point what Justice Alito was trying to do at the beginning of the opinion is to give the reader some overall sense of statutes that are really, really hard to understand, because when you try to take a RERA and fit it together with the INA, it is not an easy function. And I can tell you for many years I've tried. The words, they just they don't mesh. It's like the hand in the glove. It ain't there. So it's discordant. And there's a lot of noise when you try and read them together. We said more than once in this court about dicta coming from the Supreme Court of the United States. The words are, and I've written it, Judge Collins has written it, and we've said repeatedly there's dicta, then there's dicta, and then there's dicta that comes from the Supreme Court of the United States. And so five members of the court say our general understanding is 1225 governs those coming in, quote, arriving, and 1226 governs those already here, albeit the context isn't exactly the same. And that surely is no more than dicta. Are we to give that, is that of any moment to us? Or should we discard it completely? Your Honor, certainly because it's dicta and it didn't purport to address the question here, Your Honor certainly does not need to consider it at all. To the extent the court does consider it, again, I would point the court to page 287 of the court's opinion, which in Jennings, which says section 1225B2, ellipsis, serves as a catch-all provision that applies to all applicants for admission not covered by 1225B1. With respect to the difference between 1226 and 1225, the court saying that 1226 applies to certain people already in the United States, and that's what I was referring to, with certain aliens already in the United States, does not mean necessarily that 1225 does not also apply to some of those aliens. So that would be my response on that, Your Honor. Let me ask you one final question. And there was a supplemental filed by your colleagues citing us to an opinion issued by the Supreme Court only a couple of weeks ago in the tariffs litigation. And in that case, the Supreme Court, certainly the Chief Justice who's writing for the court in a fractured opinion, says, if an issue was a big enough ticket item, if it's a really, really important question, and the answers are not clear, that you can fairly read what Congress wrote, maybe in a couple of ways. Reasonable jurists, reasonable people could. Maybe it's time to apply the doctrine, major questions doctrine. Sort of been out there a long time, but only framed as major questions in the last five or ten years. It's just developing now. But it's taken on a meaning. And they say, if I read the thrust of their supplemental, this is one of those cases. If you have doubt about what Congress meant, this is a really, really big ticket item. And before you would allow a reading that said Congress meant to detain without bond thousands, if not tens or hundreds of thousands of people, you want to see whether Congress has spoken with sufficient clarity, given the gravity of the case. Does that doctrine apply here at all? And if it does, how would we actually apply it here? I'm really asking two subparts. Does it apply, I hear you to say, nah, really, it's for something else. And if it does apply, how would it apply here? So to answer the first question, it doesn't apply here. The major questions doctrine is generally might be applicable in a situation where there was a discretionary grant of authority to the executive. The whole reason we're here today is because this in 1225 B2A is not a discretionary grant of authority. It's mandatory. The other thing I mandatory if we know who it applies to. Right. It's only mandatory to the people that we know Congress intended for it to apply to. So if I might just sort of piggyback on Judge Marcus's question, if there is any ambiguity about that, why wouldn't we consider the major questions doctrine, given that we're talking about detaining without bond up to six million people? Well, Your Honor, so I just kind of go to the next point I was going to make, which is that we're not arguing about whether 1225 B2A requires detention. We're just arguing about the scope of that. And it's always been the case that the executive has interpreted 1225 B to require detention of some aliens. And I don't think the petitioners disagree with that. The question now is whether we're interpreting it correctly to require the detention of all applicants for admission, as the statute says. And I would also point out the major questions doctrine argument might be stronger if there were, you know, a consistent interpretation one way or the other, and this was going to completely upend that. It wouldn't for the reason I mentioned. Isn't there a consistent interpretation for over the last five presidential, after the last five presidential administrations over 30 years? Isn't there pretty much a consistent interpretation until just 2025? Not entirely, Your Honor, because the most contemporaneous regulation from 1997 actually agrees with our interpretation. And that's, I think it's 8 CFR 235. Also, as Your Honor pointed out in your concurrence in Bill et al., just because there has been an interpretation by the executive branch one way, can't vary. If they got it wrong, if the executive branch misread this statute for 30 years and you finally got it right, we're obliged to follow reading it right. I think that's clearly right. I think the question I want to ask you, though, is to your answer to my first question is it doesn't apply. It's not like the Clean Air Act, the Clean Water Act, the Food and Drug Administration, where Congress pronounces a general principle and the agency comes up with an agency interpretation, et cetera. But indulge me on the second question. Let's just assume arguendo that when you read what the Chief Justice has written about what major questions means and when you look at what Justice Gorsuch has said about it and Justice Coney Barrett, and they've spoken at length about it, that it kind of applies here. How would the application of the doctrine break out here? The reason I ask it is I looked with some interest at Justice Gorsuch's concurring opinion in the case involving the tariffs. And he said there are four markers or clues along the way. I want you just to help me with those. The first was the president or the executive branch is seeking to exercise, I'm just quoting his language, an unheralded or newfound power based on a long-extant statute. Does that apply here? No, Your Honor, because it's not a long unheralded power. The executive has consistently been exercising that authority in 1225 and in 1226 to detain aliens without bonds. So no, it's not a long unheralded power. The question is whether the long-heralded practice was to detain without bond aliens who were present in the United States as opposed to arriving at the border. The reason I raise it is when I looked at Jennings, it was interesting to see the position the Solicitor General of the United States took before the Supreme Court. And if you look at the brief filed by the government and you listen to the oral argument, the Solicitor General's position was clear as a bell. 1225 dealt with arrivals. 1226 dealt with some different category. So it's no surprise that the Supreme Court latched onto it and it wound its way into the dicta that we talked about earlier. Your Honor, it's no surprise that it wound its way into the dicta. We're not running away from the fact that the prior administrations have had an incorrect practice of applying the statute. However, the best reading of the statute by far is the one that I'm presenting here today. And again, to the extent there were any doubt from just looking at B2A, all Your Honors have to do is look over at A3. Right, but that's another way of saying you don't get to major questions because the answer is clear from the text. And if the answer is clear, you're dead right, we'd never look at it. It only becomes relevant if there's a battle, a debate, and reasonable people can look at it in different ways. Last question, looking at it, what, if any, is the significance? That's what they tell us we would look at. How many people today, and I looked at the record to see if I could find an answer, how many aliens who are present and were arrested and are in detention? What's the number? Do we have any sense of the scope of this category? Your Honor, I can probably have a more precise number for you on rebuttal. I don't have the exact number. I know it's a relatively large number. I don't know what the exact number is, but I can probably have it. Right, because the brief suggested as of January 1 or something, the numbers were 73,000. We're now on March the 26th, and I was just curious if the record reflects that. Last question, and you've been kind, we've gone way over, but you've been helping me at least. Last question I have is when I looked at 1226, if 1225 doesn't apply, then we're stuck with the default, which is 1226. But the language is very interesting that Congress used, 1226A, arrest, detention, and release. It says, on a warrant issued by the Attorney General, note the language, on a warrant issued by the Attorney General, an alien may be arrested and detained, blah, blah, blah. When I looked at the record, we had Alvarez and Perez. One of them was clearly arrested, and a warrant was issued. I think that was Alvarez. But what about Perez? I didn't see any indication in the record that anyone in the executive branch in the Immigration Service had actually issued an arrest warrant. Was there a warrant of arrest at any point in this process for Perez? Your Honor, I don't know that off the top of my head. I believe that both were issued notices to appear. I need to double check that in the brief. No, that's absolutely clear. Plus, if you look at the record, you will see Alvarez, an arrest warrant was issued. Perez, the silence is deafening. There's no indication of it. The reason I ask the question is, if they're right, that 1225 doesn't apply to these two petitioners, and 1226 applies, I don't know how 1226 could apply in any event to Perez if it wasn't on a warrant issued by the Attorney General. And I don't know what category he would be in. Well, Your Honor, so we certainly agree that 1225 applies instead of 1226. I would just point out as a general matter, the language in 1226 is discretionary. It has the word may. 1226c also has the word may. And this kind of ties off something with respect to the major question, which is that if this were such a big deal, in other words, even if you were under 1226, whether you get a hearing is still discretionary. So that takes the wind out of the major questions, too. It would be one thing if one universe were you absolutely get a hearing no matter what you're entitled to it, and the other world were you never get a hearing. Instead, we have you never get a hearing versus may in the discretion. So I just wanted to tie that off because Your Honor reminded me of it. But as to your record question, I can try to get an answer for you. Thank you very much. Thank you, Your Honor. All right. Thank you, Ms. Hedge. And we'll hear now from counsel for the petitioners. We took the government over by 28 minutes. We'll give you 28 extra minutes. You're under no obligation to use all that time, but you have it if you need it. And Ms. Hedge, you've reserved four minutes. Good morning, Your Honor. May it please the Court, my condo for petitioners at the leaves. Judge Marcus, I want to jump in and address your questions about the text. We agree that we are talking about apples versus oranges, and this is why the Fifth and the Eighth Circuits got it wrong. We know that Congress uses special terms of art all the time. The INA is rife with it, and that's what we have here. I take it you would agree with your colleague that if we gave these words their ordinary meaning, you'd lose case over. It's real easy. Of course, but that's not what we have here. No, no, but I just want to set the parameters here. So if we were to say what the Eighth Circuit said, that an applicant for admission is the functional equivalent of an alien seeking admission, they're right. You would agree with that. So you can only prevail if you say we have to use, we're looking at a term of art rather than just the common ordinary meaning we would give. Right, and Congress made very clear that applicant for admission is a term of art, and it separately defined admission to be something that not all applicants for admission can be seeking. And I think it makes sense to look at examples of people who are not, who are applicants for admission who are not seeking admission. So again, applicant for admission, it just refers to this legal fiction where people, we know that they are not admitted. They're treated as inadmissible in their removal proceedings. Some of them do seek admission. These are people coming to airports, going through customs, going to ports of entry, but some of them are not seeking admission. And the Ninth Circuit en banc in Torres v. Barr recognized applicant for admission is a term of art. Not all of them are making an application for admission, which is even closer to the term applicant for admission. Here we're talking about seeking admission. You're talking at one side of the ledger, applicant for admission. I take your point that it's a term of art because Congress has defined it, and they can define the terms any way they want. We're obliged to give their words the meaning they want us to give them, and if they've defined it that way, so be it. But I guess my overarching question is, why would Congress put into a whole section of the code, 1225, which carries the critical language under B2A, that an alien seeking admission shall be detained without bond unless they can show by clear evidence beyond any doubt that they're entitled to admission? Why even include the language, an alien present in the would seem odd if the section which is dealing with arrivals and only arrivals would have settled on that phrase in its definition. Pretty strange, isn't it? No, Your Honor. I think Congress was very purposeful when it used both the term applicant for admission and seeking admission. And I think it'll be helpful to talk through an example to illustrate why these terms have to be used before you go to that. When you look at 1225A5, and it says an applicant for admission may be required to state under oath sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States. I mean, isn't that by definition implying that applicant for admission is one seeking admission to the United States? No, Your Honor. That's simply describing what an officer can ask an applicant for admission who is making an application for admission and is seeking admission. So, that's describing people who are stopped at ports of entry and they're seeking admission. That's when they're- But you have since 2012, the BIA has made the- has written in LEMAS that an applicant for admission, you don't even have to make- Congress created this deemed a status for people who are in the country, who are present in the country, who have not been admitted. And admitted means, you know, lawful entry after inspection and being admitted. So, a person can be deemed an applicant for admission without making any application for legal status if he is not seeking admission into the United States. Yes, Your Honor. So, they are considered inadmissible and they're in removal proceedings to seek lawful status to stay in the country, but they're not seeking admission. And if I can address Limulosa, that case was about inadmissibility bars, not about the detention statute. That's sort of- that doesn't make any sense because how could they not be seeking admission? What are they seeking admissibility to? They are not seeking admissibility. People can get lawful status without ever being admitted. This is what the Supreme Court explained very clearly in Sanchez- Lawful status to what? Lawful status to stay in the country. To be admitted to the United States. No, Your Honor. Respectfully, if you look at the Supreme Court's decision in Sanchez- Well, but when they're seeking an adjustment, they're seeking a lawful adjustment, correct? Uh, they're seeking a lawful admission into permanent residence status, but this court, in the case Lanier, the Attorney General recognized that there's a difference between somebody who gets admitted under 1101A13A and someone who's admitted into OPR status- Your client is seeking an adjustment of status in order to- to do what? To reside in the country. And this court has already been very- These are two different- To be admitted into the country? To have lawful status. Okay, but lawful status under the INA means admission, because you can only be- their entry is no longer the status that we look at. What we look at now is admission. Respectfully, Your Honor, they are not being admitted. They are getting lawful status. And this court said very clearly in Lanier that there's a difference between somebody who is admitted under 1101A13, that's something that happens at the border, versus someone who's admitted post-entry into the country into lawful permanent residence status. That's- this court has already said it. I believe, Judge Marcus, you were on the panel for that. If you have lawful permanent residence status, would you not be an admitted alien? Yes, but you are not seeking admission under 1225B2. And Judge Marcus, I do want to return to- My question is a real simple one. The overarching purpose of 1225 is to set the rules of the game, or at least some of them, for inspection, expedited removal, referral for a hearing. Those are the things this section is trying to get at procedurally, those procedural issues. The question is, which category or class of aliens is the object of those procedures? The title says, arriving aliens, to the extent we- but that's not my question. If this section of the law was simply designed to deal with people on the front end coming in, not people on the back end who have been here for an extended period of time, but entered unlawfully, not at a port of entry, why would you even begin this section with an alien president, defining the category as being an alien president in the United States who has not been admitted? Why would that even be relevant to this- to this discussion? I think it's relevant, Your Honor, if you look at 1225A3, which is the inspection mandate. It says, an alien who is an applicant for admission or otherwise seeking admission, re-admission, or transit must be inspected. So, to give meaning to both terms, there must be some applicants for admission who are seeking admission and some who are not. That doesn't make sense because the whole point of that statute is, an applicant for admission, by definition, is present in the United States, and there are other aliens who seek admission who are not present in the United States. So, that takes into account are people who are present in the United States and people who are outside the United States who are seeking admission. If I can give an example, because I think it really helps illustrate why these terms cannot be coterminous. So, a returning lawful permanent resident, someone who has a green card, when they show up at the port of entry, they are deemed an applicant for admission. That's what 1225A1 does. It's creating this legal fiction that they are an applicant for admission even though they've been admitted into permanent resident status. Most returning LPRs, you know, they show up, they're inspected as is required under 1225A3, but they're not detained under 1225A2 even though they are an applicant for admission. Instead, it is only those returning lawful permanent residents who are also seeking admission under the INA as defined in 1101813C, for instance, if they abandon their status or have certain crimes. Only in that situation would that returning LPR be both an applicant for admission and seeking admission, and that's the person who is subject to be to detention. That's because their lawful status was revoked because they either committed a crime when they were abroad or they overstayed and they didn't, you know, they missed the window to come back. That may be, Your Honor, but again, this is the classic example of somebody who was subject to 1225B2 detention. Judge Marcus, you talked about Jennings, and yes, that was a constitutional avoidance case, so the parties had to brief who would be covered under those statutes, and the parties were discussing returning LPRs because those were the people who are both an applicant for admission and could be seeking admission if they fell into one of these categories that made them possibly. Are you suggesting from that that the language that I referenced from Justice Alito's opinion was more than dicta? No, Your Honor. We think that it explained, as you said, it set out what these detention statutes are doing. This is the general rule, and as this Court has said multiple times, there's dicta, and then there's Supreme Court dicta, and it's not just a throwaway line that the Supreme Court puts into their opinions, and this is consistent with also what the Solicitor General said under both the second Obama administration and the first Trump administration, that when it was talking about 1225B, it said this is the latest iteration of a long-standing scheme addressing inspection and detention at the border, whereas 1226 is what applies to people who are in the interior, including, as Your Honor noted, people like our clients who entered without inspection. It made that very clear that these are two concentric circles that do not overlap. They dispute that the position of the government today is necessarily a fundamental reordering of the last 30 years. They say at the beginning there was something, and this is cited, I think, by Judge Jones in her Fifth Circuit opinion, there was something in the Federal Register right at the outset suggesting the same reading that they're proposing to give 1225 today. Is this a new and different position that the administration is taking, or is this one that has its roots at least in some things they had said way back when? Judge Marcus, to my knowledge, that regulation that was referenced at 235.3 has never been implemented. And instead, if you look at the practice of the past five prior administrations, and including what the Solicitor General's Office said in Jennings, they applied 1226 to people who entered without inspection. That's been the unbroken practice until the middle of last year when the government decided to suddenly depart from it. And again, the government claims that 1226 only applies to people who have been admitted, but that cannot be the case. It cannot be squared with the text. The prior Congress changed the prior old 1252 that said detention pending a decision on deportability and changed it to one about removal. This was in connection with changing in IRA-IRA people who entered from being deportable to now inadmissible. So Congress would not have had to make that change to cover removal unless that term, 1226, covers people who are inadmissible. And this is confirmed by 1226C. Can I ask you a question? How then do you deal with 1225-2A that talks about, in the case of an alien who was an applicant for admission versus in 1226-A where it just talks about an alien? I mean, didn't Congress there make a distinction where it was clear that when they were talking about detention in 1225, they were talking specifically about an alien who is an applicant for admission as opposed to in 1226 when they were just talking about an alien without the modification? No, Your Honor. We actually think 1226 is the more specific statute, because if you look at 1226C1E, it references explicitly people who are here without having been admitted. Those are our clients, except for they don't have the qualifying crimes at C1E. So there's no overlap between these two statutes. The only one that can apply is 1226. And Judge Langwood. Before you get to the warrant, I want to deal more with the text, the words, and how we read this as a whole. The government makes an interesting argument. They say, even if we were to agree with you about how to read the words in B-2A and to say that an alien seeking admission, an applicant, the terms are not the same. They're two different concepts that come together there. At the end of the day, you still lose because it's indisputable that your client is seeking admission into the United States. Isn't that right? At this point, aren't Perez and Alvarez seeking admission into this country? They were clearly, they came in unlawfully. They had no authority to come in. They were never admitted into the United States. They were never received at the border at any checkpoint. They just walked in and borrowed into America for an extended period of time. Aren't they now that they have been apprehended seeking admission? No, Your Honor, for three reasons. First, the Supreme Court, as I mentioned earlier, in Sanchez v. Mayorkas, said very clearly that lawful status is an entirely different concept from admission. Just because you get lawful status does not mean you can go back in time and get an admission. There, it was talking about TPS. It analogized that to a grant of asylum. An asylum is not an admission. That is what Mr. Cerro-Perez is seeking. Similarly, even the board has recognized... Asylum seekers are deemed applicants for admission, are they not? Yes, Your Honor, but they are not seeking admission. And so I want to correct what I just said. Hernandez-Alvarez is seeking admission. Mr. Cerro-Perez is seeking cancellation. And again, the board has even recognized that cancellation of removal is not an admission. It's merely seeking to cancel the removal process for that individual. Second, Judge Marcus, removal... What I heard you just say was very interesting. Perez is not seeking admission. He's seeking cancellation of removal, right? But you said in the same phrase that the other petitioner was seeking admission. Did I mis... No, I'm sorry. I said he was seeking asylum. And the Supreme Court in Sanchez v. Mayorkas said asylum, like TPS, is a lawful status, but it is not an admission. You cannot go back in time and... So your first answer is they're not seeking admission because there's a difference between lawful status and seeking admission. Yes, that's right. And if you look at the rest of... But again, you didn't answer my question. My understanding is that individuals who are asylum seekers are deemed applicants for admission. Yes, Your Honor, but it does not mean that they are seeking admission. And as the Seventh Circuit said in Castaneda, Congress could have said these people are seeking admission, but they did not. So they chose to use the term of our applicant for admission. And seeking admission doesn't come out of nowhere, Your Honors. This comes from the prior statute at 1225B that talked about the attention of people at the border. So when Congress was amending IHRA and used the same phrase, it was certainly aware... But they were trying to remedy the problem of individuals who were coming into the country illegally, burrowing into the middle of the country, and then having the problem where they were already entered into the country. So by definition, you still have to have admission, and you still have to be admitted in order to have lawful status. They did change the rules for removal proceedings and made them inadmissible, and made them bear the burden of proof in their removal proceedings. But there is no evidence that Congress decided to upend the detention rules. But inadmissibility means you still have to have admission, right? You're inadmissible because you were not admitted. Therefore, you did not have admission into the country. No, Your Honor. Again, there's many types of lawful status that people can get, and it does not mean that they've been admitted. Judge Marcus, to go back to complete my answer from earlier... You said there were three reasons. What are the other two? Yes. So B-2 talks about seeking admission in front of an immigration... examining immigration officer. Our clients are in front of an immigration judge. They are not seeking anything in front of an immigration officer. Third, there are, again, forms of lawful status that don't lead to an admission. For instance, someone can get withholding of removal or protection under the Convention Against Torture. They'll come with a final order of removal, but that person cannot be removed to that country. It cannot be said that they've been admitted or that they were seeking admission. Same with statuses like DACA. That's merely a deferral of removal, but similarly cannot be said that that person has been admitted into the country. So for those reasons, it's not possible to say that people like our clients are seeking admission. You also raised in that supplemental, I asked your colleague about this, that if there's doubt, if there's debate, if there's ambiguity and reasonable, people can look at it in two different ways. This is a classic case to apply the major questions doctrine. She said, wrong. This is not a major questions case. This is not that kind of regulation where the Food and Drug Administration or the EPA is seeking to extend its power into areas that fall beyond the ambit of the statute. This is a simple question of the statutory command. If you fall into the category, this is the way Congress wrote it. Therefore, it doesn't apply. Why is she wrong? Why do you think the major questions doctrine applies here? I think if there's reasonable debate over what the words mean, then yes, you can apply the major questions doctrine and clearly say that Congress would have been much more clear if it wanted to subject millions of people to mandatory detention. And certainly there's reasonable debate if five administrations, the Supreme Court, Congress in the Lake and Riley Act and over 400 judges have said that 1226 is what applies to petitioners. But we're not relying on the major questions doctrine. We think even if you just applied normal. No, I am saying you said we think we win based on statutory interpretation. But in any event, if there's a debate, if there's an ambiguity, we don't think there is. But if there is an ambiguity here, major questions tips the scale. Did I get your argument right or have I misunderstood it? Yes, that's correct, Your Honor. We want you to tell me why she's wrong when she says the doctrine ought not to apply in this case because we have a general rule in place that detention mandatory detention in the interior is the exception. The government has harped on about how people who illegally enter are subject to prosecution. Yes, but they also are eligible for bond under the Bail Reform Act. It is the rule in this country that we do not lock up people without some basic form of review over whether their detention is serving a government purpose of preventing flight risk or danger. And certainly if Congress wanted to upend that and lock up millions of people, we would have expect them to say something more. And in fact, when they did it, do you have any doubt if they wanted to do that? They have the constitutional power to do that with regard to. Aliens who've crossed the border and borrowed into society, if they chose to do that in the debate is whether they have or haven't, they would have the constitutional power to do that insofar as they control immigration. There might be a question about how long they could be held, but that's not before us. I think there would be serious constitutional questions because the Supreme Court has said for over a hundred years that the touchstone is entry, not admission. It is whether or not the court has recognized once someone has entered our country lawfully or not, they are due some process. I ask you, are you saying that it's your position that the United States Congress could not constitutionally detain without bond aliens who using their, the definition we have are present in the United States. They couldn't do that. That question is not before the court. I understand, but I heard you to be answering me by invoking that argument. I didn't read it in your brief. I think it would be inconsistent with what the Supreme Court said in Zobby Dallas V. Davis, as well as Jim Moore, which recognized that the normal civil detention principles apply and when some, the government wants to lock. Yeah, but the problem there was, could you hold it for an indeterminate period of time? An alien that had gone through the process, all the courts had said he shall be removed and they couldn't find the foreign country to take them. And so he still remained in detention. The question there is, could you hold them indefinitely? A little bit different than what we have. I don't want to get you far afield into that area. Do we know how many people, I'd ask this question of Ms. Hedges, how many people are affected by this policy or this pronouncement from the administration? So as we noted in our brief, there are estimates of up to 6 million people who have entered without living in the country. And in the amicus brief submitted by the American Immigration Council, they go through a whole catalog of people who have been swept up in this detention mandate. This includes DACA recipients, people with TPS, long-time residents, people who have pathways to legalizing their status and whom the government doesn't even argue pose any flight risk or danger. All these people, tens of thousands of people at least have been subject to this detention. And again, we know... Do we have a number from this record? Not... The only thing in the record that I was able to find said, as of January of 26, 73,000 aliens were detained. Right. And that is a... Without prompt. And that is a snapshot, Your Honor. And I think the amicus brief does a good job of running through all the categories of people who have been subjected and some of whom have accepted removal because of this detention mandate. I want to make sure, Your Honor, that I get to the warrant question that you had raised earlier, if I may. Please. So 12... Yes, you are right that we don't see anything in the record indicating that Mr. Cerro-Perez had a warrant, but there is no requirement to be detained under a warrant to fall within 1226. There are two ways that people in the interior can be put into detention, either on a warrant or if the immigration officer has probable cause of a violation of immigration laws and flight risk, then the immigration officer can also detain that person and put them through 1226. And it wouldn't make any sense to require a warrant. Where will I find that? In the CFR? No, it's in 8 U.S.C. 1357. That explicitly addresses the powers of immigration officers to make warrantless arrests. And it would not make sense to have a warrant requirement because it would lead to absurd results. For instance, you can have somebody who oversaved their visa, and they can go up into an immigration officer and say, I overstayed my visa. Clearly, they are removable because they don't have present status. But if you impose a warrant requirement, then they would fall under no detention statute because they couldn't be detained under 1225B. They've been admitted and are not seeking admission. But if you had a warrant requirement for 1226, they couldn't fall within that statute. Why then do they issue a warrant for the arrest of one of the petitioners and not the other here? This is not explained in the record, but my my conjecture is that it's because Mr. Cerro-Perez stated that he did not have status. So that was enough to provide probable cause for the officer to then process him under 1226. But I do think that the warrant requirement in 1226 is instructive because it reflects a difference from detention under 1225B. There is no warrant requirement at the border because, of course, this government has more authority around controlling who gets in and out. However, once someone is in the country, of course, there are other principles that apply, including the Fourth Amendment. That's why you need either a warrant or you need probable cause. And again, this underscores why it's only 1226 that applies to people like our petitioners who are arrested in the interior of the country. If I may address the point that the government has tried to make about incentives, this is not about rewarding people with bond hearings. People don't come here to seek a bond hearing. This is about whose detention Congress mandated in 1996. They were so concerned about the new detention mandates that they passed for criminal aliens, people with final orders, people placed into expedited removal, that they delayed implementation of 1226C by two years. That was for a very modest increase compared to the millions of people that we're talking about now. And it's implausible. Didn't Congress want to treat these two categories in a like-minded way and break down what had been a disparate treatment? They did that by changing their status in removal proceedings and made them inadmissible. But they did not change the rules for detention. We know that because they changed the language in the bond-eligible statute to cover people who are inadmissible. They made that clear in subsection C by carving out certain people who are inadmissible. If you accept the government's interpretation, it would be nullifying whole sections of 1226. In addition, it said in the report that it was restating the prior provision that provided bond for people who are unlawfully present. And at the same time, it was very explicit about when it was enacting a new detention mandate. They did it for people with crimes. They did it for people with final orders and people placed into expedited removal. That's the tool that Congress gave to the executive to deal with recent border crossers. It said explicitly there, we will allow you to put people into fast-track deportation and subject them to mandatory detention if they're put into expedited removal. But if they are in regular 240 removal proceedings, then they're eligible for bond under 1226 because that's what Congress provided for in the statute. And this makes sense. This continues a long-standing scheme of differentiating between those who are stopped at the border and people like our clients who have been here, they've been living here, they have families, they've been working and contributing to their communities. Again, the government does not argue that they are any flight risk or danger, so it makes perfect sense why Congress would not want to mandate their detention. Can I ask you a question because you would talk to me before about aliens who were lawfully, who have permanent resident status, right? My understanding under the definitional section is that they are not regarded as seeking admission unless they do certain things like they abandon the status, they're absent from the United States from a period of excess of 180 days. Is that your understanding? Yes, and this illustrates that Congress could have said when they wanted people to be considered seeking admission. But they didn't do that for people like our petitioners. This is a canon of statutory interpretation. We give meaning where possible to every word that Congress has set out in the statute. And it is, the government's interpretation simply is not in line with those canons. And I'm running out of time, so I just want to say that, again, the government cannot override Congress's choice here. And we ask that you please affirm the district court. Thank you. All right. Thank you, Ms. Nago. Ms. Hedges, you have reserved four minutes. Thank you, Your Honor. I want to very quickly correct something I think I said before, which I believe I may have misspoken and said that 1226C is discretionary. It's not. It says shale taken to custody. I was referring to 1226A as having that may language. Now, I think, again, to the extent there's any question about 1225B2A and what seeking admission means, all we need to do is look over at A3 and that or otherwise structure, which this court in the Villareal case and Judge Rosenbaum and her concurrence in that case, I believe it's 976 through 977 of the concurrence, both agreed that that or otherwise formulation may. Again, though, I don't really think that's an accurate representation because in that case, they were all verbs. And so that made sense there. But this is not that kind of a structure. It's got types of parts of speech. And so the or otherwise language there, it's not the same. It's not a comparable structure. So I don't think that looking to Villareal necessarily gives you the answer here. Your Honor, it's not exactly the same, but we have the same construction of it says applicant for admission and then it says or otherwise seeking admission or readmission to. And there's no other reasonable way to read that structure, even just coming at it from whole cloth without Villareal. There's no other way as a matter of English language to read that structure that would say seeking is narrowing applicant for admission. If anything, applicant for admission is a subset. And that's the language that this court used in Villareal. But it's also the language that the Seventh Circuit used in the Cleaver case that we cite. The Fifth Circuit and the Eighth Circuit are consistent with that. The other thing I would point out going back to something Judge Lagoa was asking my colleague about is that A5 also supports us. It also has that seeking admission language. And again, it's consistent with what the Fifth Circuit and the Eighth Circuit have held, which is that at a minimum, those two terms are referring to the same group of people. On the longstanding agency interpretation, I don't believe I got to say this before, but in addition to Villareal, which also dealt with the longstanding, I believe, 50 years agency interpretation that went the opposite way to what the court ultimately held, we have Pereira v. Sessions, which is the case that we cite in our briefing from the U.S. Supreme Court that dealt with notices to appear. And it also took an interpretation of the statute that I believe eight justices of the Supreme Court all agreed, even though it departed from two decades of practice by the executive branch. The other thing I would point out with respect to 1226C is that there's overlap under any interpretation. So as we point out in our brief, there are categories of aliens who are arriving aliens who would be subject to the explicit terms of 1226C, who under petitioner's interpretation, they would also agree those are arriving aliens. Therefore, they would be subject to 1225B. And what I would say there is, first of all, superfluity only kicks in when each reading gives meaning to every word of the statute. And in this case, we're not running away from the fact that there's some overlap. It's reasonable Congress would have wanted to take a self-incentive approach. You know, when Congress enacted the Lake and Riley Act just last year, it seemed like it was indicating that it did not want the people who it legislated about to be out at all, right? They wanted them to be detained until they were removed, right? Isn't that what your understanding was? Congress was acting to address a specific problem and remove the option of parole. And so your interpretation, though, allows for people who are present in the United States who wind up falling into one of these categories about inadmissible to be discretionarily paroled into the United States, doesn't it? I'm sorry, if I understand the question. Well, if you're saying that they're covered by 1225 and 1226, and they're covered by one of the 1226, the ones that pertain to inadmissibility, because inadmissibility would apply to people who are present in the United States, then since under 1225, you can obtain, well, under 11, I guess under 1182, but through the 1225, you can obtain a humanitarian parole or otherwise into the country. Would you then be allowing people under, you know, people who would be subject to the Lake and Riley Act who are present in the United States to then be able to be humanitarianly paroled into the United States? No, Your Honor. So the interaction of those two statutes... Can you tell me the part of the language that you would rely on for that? Well, Your Honor, so with respect to those categories of aliens, the Lake and Riley Act, which is 1226C1E, I believe, is the more specific version of the statute. So whereas under 1225B, you might ordinarily be eligible to be considered for parole. The Lake and Riley Act takes that option off the table in a very clear and explicit terms for certain categories of aliens. So we're not saying there's no overlap under the statute. What we're saying is... Oh, just to be clear then, for... Well, first of all, what is the language you point to that takes it off the table? Because the language I'm reading... Actually, you know what? I don't even... It doesn't even matter for the Lake and Riley, although I'm interested, but we're running out of time. But the other categories under section C there that pertain to inadmissible non-citizens, because they're present, right? They would then be subject to... There's no question. You're not suggesting that they wouldn't be subject to humanitarian parole, right? Isn't that right? I mean, that's what implication of your argument is, isn't it? So if you fall under 1225B as a general matter, there's a provision that says you can be considered for parole. 1226C then says that certain categories of aliens shall be taken into custody. With respect to the categories of aliens who are inadmissible, there could be some overlap. And I want to make sure I'm not responding to a under the Lake and Riley Act, subparagraph E sub two explicitly references without regard to whether the alien is released on parole. So that's language I was pointing to there. Except that it seems to me that what it's talking about there is when a non-citizen is encountered in jail or in prison after having been charged with, arrested for, and convicted of, blah, blah, blah. Then when the alien is released without regard to whether the alien is released on parole, meaning released on parole from the prison charge of the thing that makes them eligible in the first place. I'm not even seeing where it says they can't be released. They can't later be released discretionarily for humanitarian reasons. I don't understand where that reading comes from. To me, it's clear this is talking about released on parole from at the time they're encountered after they've been released from their sentence. Your Honor, subsection C4 explicitly says that the attorney general may release an alien described in paragraph one, which covers those categories we were just discussing, only if the attorney general is a non-citizen. I don't think there's any dispute among the parties here that Congress acted to resolve a specific problem in the Lake and Riley Act. But I think the point I'm trying to make with respect to the overlap is that there's overlap under the petitioner's interpretation as well. And we really get into the nitty-gritty in our briefs, but I have examples of that if you'd like them. But also with respect to those specific categories of aliens that the Lake and Riley Act is specifically taking the option of parole off the table for, then 1226E for those aliens would be the more specific statute and would govern. But as I think we've been discussing already, 1226A in general uses the term alien, which is the broad term. And so there's pieces of work for each section of the statute to do. The fact that there's overlap doesn't require us to nullify the most plain reading of the text, and that's the Barton v. Barr case that we said in our briefing. So that's what I would say about that, Your Honor. I hope I've been responsive to your question. All right. Thank you very much. Thank you, Your Honor. And if I may, oh, I'm sorry. Just one more question. I'd like you to address your opposing counsel's argument about Perez seeking cancellation removal and Hernandez seeking asylum and that not being, that that adjustment was not seeking admission. Can you petition for an adjustment for cancellation removal or to seek asylum without seeking admission to the United States? Your Honor, I think that their interpretation again falls back on a colloquial meaning of seeking admission, and that's off the table here because admission is a defined term. And then to the extent there's any ambiguity about what work seeking is doing, it's resolved by that or otherwise language in A3, which makes clear that an applicant for admission is a subset of those seeking admission. So does that answer Your Honor's question? I would just say before I sit down, thank you for your time. And one other thing, though, you had said you wanted to take a look at your materials when you broke up numbers. Thank you for reminding me. So with respect to the number of aliens, Your Honor, you're correct. And I believe my colleague is correct that that's not on the record. So the exact number is not on the record. With respect to the arrest warrant. I take it it's fair to say, based on everything we know, the numbers are large. I mean, large is a descriptive term that I believe is relative. Well, the number, the only number in the record is 73,000 as of January. Right, Your Honor. To the extent we can take that as a number. I have no reason to say that that's incorrect. And it may be different now, as you noted, we're a couple of months on. So I have nothing to say that that's incorrect. With respect to the number that existed at that time with the category that it was describing. But I don't have a more concrete number. There's nothing in the record that tells us how many aliens are present in the United States who have not been admitted. No, Your Honor, I don't believe that's in the record. Whether it's a thousand, a million, or 10 million. Correct, Your Honor. I don't believe that's in the record. So if the court, I would just make this request that the court would rule quickly, respectfully, but that's something we've asked for. What's the status of the other cases? As I understand it, the Fifth Circuit has ruled. Yes. And the Eighth Circuit has ruled. And the Seventh Circuit ruled in a preliminary injunction hearing, but not in. Not on the matter. Yet, but they've taken argument, right? I don't believe argument has occurred yet. What about the Sixth and the Ninth? Correct. Those were argued and pending a decision. Both were argued? Yes, Your Honor. So, and then there are other circuits that are still being briefed. All right. Thank you very much. And we'll be in adjournment.